UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUNNIE HART,

                              Plaintiff,

                    -against-                        **COMPLAINT**

THE CITY OF NEW YORK, P.O. DANIEL DELPINO,     **JURY TRIAL DEMANDED**
Shield No. 11853 (Tax ID # 948868), Individually and in
his Official Capacity, and P.O.s "JOHN DOE" #1-10,     **ECF CASE**
Individually and in their Official Capacity (the name John
Doe being fictitious, as the true names are presently
unknown),

                            Defendants.

-------------------------------------------------------------------X

      Plaintiff JUNNIE HART, by his attorneys, COHEN & FITCH LLP, complaining of the defendants, respectfully alleges as follows that:

**PRELIMINARY STATEMENT**

      1.    Plaintiff brings this action for compensatory damages, declaratory relief, injunctive relief, punitive damages, and attorney's fees pursuant to 42 U.S.C. §1983, 28 U.S.C. §§ 2201-2202, and 42 U.S.C. §1988, for violations of his civil rights, as said rights are secured by said statutes and the United States Constitution.

      2.    Plaintiff sues herein *inter alia*, for the purpose of a seeking declaratory judgment as to the applicability of said statute – New York City Administrative Code ("A.C.") 24-233 – Personal Audio Devices[1] – with respect to his (and other third parties not before the Court)

---

[1] New York City A.C. 24-233 states: "(a) No person shall operate or use or cause to be operated or used any personal audio device in such a manner as to create an unreasonable noise. (b) For the purposes of this section unreasonable noise shall include but shall not be limited to: (1) the operation or use of a personal audio device on or in any public right-of-way so that sound emanating from such device is plainly audible to another individual at a distance of 25 feet or more from the source. (2) the operation or use of a personal audio device from on or inside a motor vehicle, whether moving, parked, stopped or standing, on or in any public right-of-way so that sound emanating from such device is plainly audible to another individual outside of such motor vehicle at a distance of 25

future playing of personal audio devices on or in any public right-of-way, due to the infirmity and unconstitutionality of said statue on vagueness and overbreadth grounds, in that the void-for-vagueness and overbreadth doctrines are not only due process principles which give rise to a federal constitutional right but are also fundamental and historical principles of criminal justice.

3. By way of example, just as a motor vehicle speeding statutes require police officers to measure the speed (in miles per hour) at which a motor vehicle is traveling, in order to determine whether a motorist is in violation of same, and to specify the exact speed a motorist was traveling at the time of the violation when issuing a speeding citation, sound is similarly and just as readily measurable (by decibel level).

4. However, unlike speeding statutes, which specify an exact measurement of speed over time which violates the law, in order to put motorists on notice as to what behavior violates the law and what does not, the contested statue, A.C. § 24-233, states that sound emanating from personal audio devices on or in any public right-of-way (i.e. vehicle stereos) that is "plainly audible" to persons "twenty-five feet or more" away, violates law *without* explicitly specifying what decibel level over distance violates the law.

5. Thus, unlike with speeding statutes, with respect to A.C. § 24-233, individuals are left to guess as to whether the sound from their personal audio devices does or does not violate the law, based on whether someone can or cannot hear same in a "plainly audible" fashion from twenty-five (25) feet or more, and not based on any objective criteria, making the statute both vague and overbroad.

---

feet or more from the source. (c) Nothing in this section shall be construed to permit the operation or use of a personal audio device where such operation or use would otherwise be prohibited pursuant to section 10-108 or 24-244 of the administrative code." N.Y., Code § 24-233.

6. Moreover, that a sound is "plainly audible" does not make it criminal, as the term "audibility" under its ordinary meaning simply means "able to be heard." Indeed, the First Amendment covers many such sounds that may otherwise be "able to be heard" yet do not – and could not – be constitutionally prohibited in such a sweeping manner. In other words, in New York City – the area where this statute is exclusively applied – there are an innumerable amount of sounds that may be "plainly audible" under the vague and overbroad language of the statute, but nonetheless constitutes protected speech incapable of blanket prohibition. As such, the statute as currently drafted runs afoul of the First Amendment.

7. Finally, it is indisputable that hearing can differ from person to person, making said determination of what is "plainly audible" from twenty-five (25) feet or more all the more subjective and arbitrary. For example, it is entirely plausible that one NYPD officer, with extremely satisfactory hearing, might easily be able to hear sound from a source twenty-five (25) feet or more away while another officer, with average or less-than-average hearing, who is the same distance from the source of the sound, may not. This grossly inconsistent application of the law makes A.C. § 24-233 constitutionally infirm and void under the vagueness and overbreadth doctrines.

## JURISDICTION

8. This action is brought pursuant to 42 U.S.C. §1983, 28 U.S.C. §§ 2201-2202, 42 U.S.C. §1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

9. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

10. This Court has the power to render declaratory judgment and further relief pursuant to the provisions of 28 U.S.C. §§ 2201-2202

## VENUE

11. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

12. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

13. Plaintiff JUNNIE HART is an African American male and has been at all relevant times a resident of Richmond County in the City and State of New York.

14. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

15. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, The City of New York.

16. At all times hereinafter mentioned defendant P.O. DANIEL DELPINO and defendant P.O.s JOHN DOE #1-10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

17. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

19. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

**FACTS**

20. On or about March 4, 2019, at approximately 3:12 p.m., plaintiff JUNNIE HART was lawfully in the vicinity of 250 Broad St., Staten Island, NY, which is the CNB Staten Island Center Laundromat and Dry Cleaner (hereinafter "CNB" and/or "the laundromat").

21. At the above-mentioned time and place, plaintiff lawfully parked his vehicle in the CNB parking lot, exited same with his brothers, and was walking towards CNB, when he and his brothers were accosted by approximately two (2) NYPD officers – namely, defendants DELPINO and/or JOHN DOE #1-10 – who directed plaintiff and his brothers to provide them with identification.

22. In response to this request for identification, plaintiff asked defendants DELPINO and JOHN DOE #1-10 what was going on and further requested to know why he needed to provide identification as he had not committed any crimes and/or offenses or behaved unlawfully in any way.

23. Immediately thereafter, defendant DELPINO and/or JOHN DOE #1-10 began to scream at plaintiff to give them identification, and before plaintiff had a chance to respond to this request – and despite the fact, plaintiff had done nothing wrong and was not engaged in any criminal activities that would justify this request for identification – defendant DELPINO and/or

JOHN DOE #1-10 rushed towards him, grabbed him by his arms, and placed him under arrest by tightly handcuffing his arms behind his back. Plaintiff did not resist being arrested.

24. At no time on March 4, 2019, had plaintiff committed any crimes and/or offenses or behaved unlawfully in any way.

25. Thereafter, plaintiff was searched and transported to a nearby police precinct where he was fingerprinted, photographed, searched, questioned, detained in a holding cell, and charged by defendants DELPINO and/or JOHN DOE #1-10 with Obstructing Government Administration, Disorderly Conduct, and violating A.C. § 24-233(2).

26. At no time on March 4, 2019, did the plaintiff obstruct government administration, act in a disorderly manner, violate A.C. § 224-233(2), or behave unlawfully in any way.

27. At no time on March 4, 2019, did defendants DELPINO and/or JOHN DOE #1-10, possess reasonable suspicion and/or probable cause to arrest plaintiff.

28. At no time on March 4, 2019, did defendants DELPINO and/or JOHN DOE #1-10 possess information that would lead a reasonable officer to believe probable cause existed to arrest plaintiff.

29. Thereafter, plaintiff was transported to Central Booking where he was searched, subjected to a retina scan ("eye scan"), and further detained in holding cells until he was released following criminal court arraignment.

30. In connection with the plaintiff's arrest, defendants DELPINO and/or JOHN DOE #1-10 filled out false and/or misleading police reports and forwarded them to prosecutors at the Richmond County District Attorney's Office – namely, the defendants falsely informed prosecutors that plaintiff operated a motor vehicle while sound emanating from such vehicle was

plainly audible from outside the vehicle at a distance of twenty-five (25) feet or more and that plaintiff refused to produce his license even after multiple requests for same.

31. As a result of his unlawful arrest, Mr. Hart spent approximately twenty-four (24) hours in custody before being released following criminal court arraignment.

32. Subsequently, Mr. Hart made approximately three (3) court appearances before all charges against him were adjourned in contemplation of dismissal on or about May 2, 2019.

33. In addition, as a result of this unlawful arrest, Mr. Hart was fired from his job and incurred lost wages. Further, as a result of the foregoing, Mr. Hart suffered physical injuries as a result of being tightly handcuffed.

34. As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, mental anguish, shock, fright, apprehension, embarrassment, humiliation, physical injury, and deprivation of his constitutional rights.

## **PLAINTIFF'S STANDING TO SUE FOR DECLARATORY JUDGMENT**

35. While, as mentioned *supra*, plaintiff denies that the music, if any, from his car stereo was at a volume which was and/or would have been plainly audible to persons outside of his vehicle at a distance of twenty-five (25) feet or more, plaintiff no longer dares to play his car stereo at a volume beyond that of a whisper, or at all, because he might again be arrested and deprived his liberty, might again be subjected to such intentional infliction of mental distress and reckless behavior as was exhibited by defendants DELPINO and/or JOHN DOE #1-10, and might again suffer the stigma of being a criminal defendant requiring counsel and bearing the associated ongoing costs and losses.

36. Plaintiff reasonably believes, based on his experience as hereinbefore described, that he could all too easily once again be prosecuted for violating A.C. § 24-233 for playing his

car stereo, at a low and/or ordinary volume if only one of the thousands of NYPD officers employed by the City of New York decided that it was "plainly audible" to them from a distance of twenty-five (25) feet or more (or used A.C. § 24-233 as a pretext for an otherwise unlawful restraint on plaintiff's speech because said officer was offended by the content of the speech itself), even if plaintiff himself (or another person and/or officer) was not able to hear said car stereo from the same distance no matter how hard he tried.

37. An ordinance may be facially unconstitutional in two ways. The first kind of facial challenge asserts that the ordinance is unconstitutional in every conceivable application and could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity. The second type of facial challenge asserts that the ordinance is written so broadly that it includes constitutionally protected activities within its prohibitions, and is therefore unconstitutionally overbroad. Here, A.C. § 24-233 is both unconstitutionally vague and unconstitutionally overbroad.

38. First, with respect to vagueness, A.C. § 24-233 is void-for-vagueness because it necessarily depends on the subjective opinions and sensitivities of a police officer. Importantly, "[t]he void-for-vagueness doctrine embodies a 'rough idea of fairness' and the most common standard by which the sufficiency of the statute is measured when attacked for vagueness is that it must not be so drawn that men of common intelligence must necessarily guess at what conduct is prohibited." (*Quintard Assoc., Ltd. v New York State Liq. Auth.*, 57 AD2d 462, 465 [4th Dept 1977])(alteration added)(citations omitted).

39. It is a fundamental principle of due process than an enactment must clearly delineate the conduct it proscribes. Vague laws, such as A.C. § 24-233 herein, offend the principle of due process because they may entrap the innocent by not giving fair warning of what

conduct is prohibited and can result in arbitrary and discriminatory enforcement. Importantly, the Supreme Court has noted that vague laws concerning matters of First Amendment freedoms, such as the one herein, are additionally concerning because the lack of clarity in the law "operates to inhibit the exercise of (those) freedoms." (*Grayned v. City of Rockford, 408 U.S. 104, 108 [1972]*).

40. Further, since 1962 it has been well-established in New York State that noise-control ordinances, like A.C. § 24-233, are unconstitutionally void for vagueness when vagueness of definitions of the conduct prohibited fail to provide persons with adequate warning of what the law requires and thus render the ordinance susceptible to arbitrary and discriminatory enforcement. (*See People v New York Trap Rock Corp., 57 NY2d 371 [1982]*).

41. In addition, while "[t]he vagueness doctrine is commonly applied to criminal statutes and to administrative regulations which carry penal sanctions[,] [t]here is, [] a growing recognition that it is also applicable to statutes or administrative regulations imposing serious civil sanctions, especially where First Amendment rights are implicated." (*Quintard Assoc., Ltd. at 464) (alteration added)(citations omitted)*.

42. Here, plaintiff alleges that A.C. § 24-233 prohibition of noises that are "plainly audible" from a distance of twenty-five (25) feet or more is highly subjective and fails to create a discernable standard that would inform a person of ordinary intelligence what is prohibited. Plaintiff takes issue with the fact that the statute not only lacks any objective measurements, such as decibel level but omits any reference for volume or noise level at all.

43. To that end, determining whether a noise is "plainly audible" from twenty-five (25) or more is entirely a matter of personal perceptions and lacks virtually any objective standard. An "individual of ordinary intelligence" cannot know whether their expression would

be prohibited by the statute because the answer turns on the unique sensitivities of any given person witnessing the noise. The ambiguity inherent in this language fails to provide adequate notice of the kind of noise prohibited by the statute and opens the statute up to subjective and arbitrary enforcement by government officials. Likewise, because A.C. § 24-233 requires men of common intelligence to guess at what conduct is prohibited, the statute is void under the vagueness doctrine.

44. Moreover, as a result of the vagaries of the statute, it also impermissibly restricts constitutionally protected activity under the First Amendment – namely, an individual's right to play music. *(See Ward v Rock Against Racism, 491 US 781, 790 (1989))*("Music, as a form of expression and communication, is protected under the First Amendment.").

45. Thus, one who wishes to play constitutionally protected music at a "plainly audible" level is prohibited from playing music at *any* level at all for fear that it might also violate the overbroad and vague requirements of the statute. A fortiori, the statute as drafted also effectively creates a prior restraint on constitutionally protected speech.

46. Second, in addition to being void for vagueness, A.C. § 24-233 is unconstitutionally overbroad because it lacks objective criteria for assessing whether a violation occurred, including any reference to volume or decibel level.

47. Importantly, the overbreadth doctrine exists 'out of concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech. Likewise, whether a particular law is unconstitutionally overbroad turns on "whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned*, *408 U.S. at 114–15*. In a facial challenge brought on First Amendment grounds, a local ordinance "may be invalidated as overbroad if a substantial number of its

applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." (*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 944 (9th Cir. [2011]).

48. Here, plaintiff takes particular issue with the phrase "plainly audible" because it makes no distinction between sounds that are just loud enough for someone to hear from twenty-five (25) feet or more and sounds that are unreasonably loud. Likewise, because it lacks any reference to volume, it essentially outlaws speech regardless of its actual noise level simply because some person twenty-five (25) feet or more away can hear it. Without being tethered to volume or other more specific prerequisites for enforcement, A.C. § 24-233 impermissibly sweeps within its prohibitions speech that one finds annoying based on its *content* rather than its sound and cannot pass constitutional muster.

49. Thus, due to the fact plaintiff was charged with a Violation for an allegedly playing music from his car stereo that was "plainly audible" from a distance of twenty-five (25) feet or more – and despite the fact, plaintiff denies same with respect to his March 4, 2019 arrest – because A.C. § 24-233 does give adequate warning of what the law requires and is this susceptible to arbitrary and discriminatory enforcement, plaintiff must reasonably either: (1) forgo playing any car stereo that might be "plainly audible" by some NYPD officers, even if said stereo is not "plainly audible" to other NYPD officers, other persons, and/or plaintiff himself, making it impossible for plaintiff (and others) to identify at which volume it is acceptable to play a car stereo; or, (2) risk being the target of another prosecution for violating A.C. § 24-233, for playing a car stereo at a low and/or ordinary volume (or not at all), even though it reasonably appears that the volume is not "plainly audible" and plaintiff has a well-established First Amendment right to play music in his vehicle.

50. Plaintiff still wishes to play his car stereo, as is his First Amendment right, provided that he may do so lawfully. Thus, plaintiff is forced to choose between risking further criminal prosecution and forgoing conduct that should not, under constitutionally significant and established principles of the vagueness doctrine, *supra*, give rise to criminal prosecution. Plaintiff is thus caught "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding" (*Steffel v. Thompson*, 415 U.S. 452, 462 (1974)), and has standing to seek appropriate declaratory judgment.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

52. All of the aforementioned acts of defendants, their agents, servants, and employees, were carried out under the color of state law.

53. All of the aforementioned acts deprived plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

54. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers with all the actual and/or apparent authority attendant thereto.

55. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices,

procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

56. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

### SECOND CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

57. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

58. As a result of the aforesaid conduct by defendants DELPINO and/or JOHN DOE #1-10, plaintiff was subjected to illegal, improper and false arrest by the defendants DELPINO and/or JOHN DOE #1-10, taken into custody, and caused to be falsely imprisoned, detained, illegally searched and confined, without any probable cause, privilege or consent.

59. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

### THIRD CLAIM FOR RELIEF
### DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL
### UNDER 42 U.S.C. § 1983

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

61. Defendants DELPINO and/or JOHN DOE #1-10 created false evidence against the plaintiff.

62. Defendants DELPINO and/or JOHN DOE #1-10 forwarded false evidence and false information to prosecutors in the Richmond County District Attorney's Office – namely,

the defendants falsely informed prosecutors that plaintiff operated a motor vehicle while sound emanating from such vehicle was plainly audible from outside the vehicle at a distance of twenty-five (25) feet or more and that plaintiff refused to produce his license even after multiple requests for same.

63. Defendants DELPINO and/or JOHN DOE #1-10 misled the prosecutors by creating false evidence against the plaintiff and thereafter providing the aforementioned false statements throughout the criminal proceedings.

64. In creating false evidence against the plaintiff, in forwarding false evidence and information to prosecutors, and in providing false and misleading sworn statements, defendants DELPINO and/or JOHN DOE #1-10 violated plaintiff's constitutional right to a fair trial under the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

65. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints without probable cause.

### FOURTH CLAIM FOR RELIEF
### FAILURE TO INTERCEDE UNDER 42 U.S.C. § 1983

66. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

67. The defendants DELPINO and/or JOHN DOE #1-10 had an affirmative duty to intercede when plaintiff's constitutional rights were being violated in their presence by misrepresenting and falsifying evidence regarding the circumstances surrounding plaintiff's arrest throughout all phases of the criminal proceedings.

68. Defendants DELPINO and/or JOHN DOE #1-10 further violated plaintiff's constitutional rights when they failed to intercede and prevent the violation or further violation of plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

69. As a result of the defendants' DELPINO and/or JOHN DOE #1-10 failure to intercede when plaintiff's constitutional rights were being violated in defendants' presence, plaintiff sustained, *inter alia*, physical and emotional injuries, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF FREE SPEECH CLAUSE OF THE UNITED STATES CONSTITUTION

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

71. Plaintiff's speech, to wit, playing music, is protected under the First Amendment.

72. Plaintiff challenges New York City A.C. § 24-233 both on its face and as applied to the facts alleged herein.

73. A.C. § 24-233 and its individual enforcement against plaintiff's speech activities:

   a. Is vague and overbroad;

   b. Discriminates against speech because of the content

   c. Discriminates against speech because of the viewpoint;

   d. Restrains constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards as to guide the discretion of officials charged with enforcing it;

    e. Chills the free speech of plaintiff and other third-party citizens;

    f. Allows for the exercise of unbridled discretion;

    g. Constitutes a content-based and view-point based heckler's veto that silences plaintiff's expression due to the reaction of hostile audiences;

    h. Lacks narrow tailoring, fails to achieve any legitimate government purpose; and

    i. Is unreasonable

74. Defendants have no compelling or legitimate reason that can justify the censorship of plaintiff's constitutionally protected activity through the application and/or enforcement of A.C. § 24-233.

75. A.C. § 24-233 and Defendants' policies and practices enforcing it violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

76. Plaintiff is therefore entitled to a declaration that A.C. § 24-233 is unconstitutional and injunctive relief enjoining defendants from continuing to enforce same.

### SIXTH CLAIM FOR RELIEF
### VIOLATION OF DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

77. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

78. A.C. § 24-233 is too vague to give persons of reasonable intelligence fair notice of the quantum of volume which is prohibited and impermissibly restrains constitutionally protected activity.

79. A.C. § 24-233 lacks sufficient objective criteria to guide law enforcement officers and prevent arbitrary and discriminatory enforcement, vesting officers with unbridled discretion to enforce same.

80. A.C. § 24-233 as drafted is overbroad in that it criminalizes a variety of activity protected under the First Amendment.

81. Defendants' policy and practice of enforcing A.C. § 24-233 based on an officer' subjective complaint, fails to give persons of reasonable intelligence fair notice of what precise conduct is prohibited.

82. Defendants have no compelling or legitimate reason that can justify this vague and overbroad statute of their policies enforcing them.

83. A.C. § 24-233 and defendants' enforcement thereof violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

84. Plaintiff is therefore entitled to a declaration that A.C. § 24-233 is unconstitutional and injunctive relief enjoining defendants from continuing to enforce same.

**SEVENTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

85. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

86. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

87. The aforementioned customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

> i. arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics; and,
>
> ii. arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing; and,
>
> iii. fabricating evidence in connection with their prosecution in order to cover up police misconduct; and,
>
> iv. showing deliberate indifference to whether the arrests made pursuant to that were made based on probable cause or with the proper application of the New York Penal Law; and,
>
> v. showing deliberate indifference to the training of subordinate officers to not arrest individuals unless they are arrested upon probable cause or a basis under the law in accordance with the proper standards under the New York Penal Law; and,
>
> vi. failing to intercede to prevent violations of plaintiff's constitutional rights.

88. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff.

89. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

90. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

91. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the plaintiff's constitutional rights.

92. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of the plaintiff's constitutional rights.

93. The acts complained of deprived the plaintiff of his right:

   a. Not to be deprived of liberty without due process of law;

   b. To be free from seizure and arrest not based upon probable cause;

   c. Not to have summary punishment imposed upon him; and

   d. To receive equal protection under the law.

**WHEREFORE**, the plaintiff respectfully requests judgment against defendants as follows:

   i. an order awarding compensatory damages in an amount to be determined at trial;

   ii. an order awarding punitive damages in an amount to be determined at trial;

   iii. a judgment declaring that A.C. § 24-233 is unconstitutional on its face and as applied to plaintiff, because said statute violates his rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

   iv. entering a preliminary and permanent injunction enjoining defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, from enforcing A.C. § 24-233;

   v. reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

   vi. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

Dated: New York, New York
       May 29, 2020

BY: _____/S_____
JOSHUA FITCH
GERALD COHEN
ILYSSA FUCHS
COHEN & FITCH LLP
*Attorneys for Plaintiff*
225 Broadway, Suite 2700
New York, N.Y. 10007
(212) 374-9115

                jfitch@cohenfitch.com
              gcohen@cohenfitch.com
               ifuchs@cohenfitch.com